**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Walter R. CONLIN, Defendant-Appellant.**

**No. 648, Docket 76–1346.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 10, 1977.
Decided March 17, 1977.

Michael R. Wolford, Rochester, N.Y. (Nixon, Hargrave, Devans & Doyle, Rochester, N.Y., of counsel), for defendant-appellant.

Eugene Welch, Rochester, N.Y. (Richard J. Arcara, U.S. Atty. W. D. Buffalo, N.Y., Gerald J. Houlihan, Asst. U.S. Atty., Rochester, N.Y., of counsel), for plaintiff-appellee.

Before MANSFIELD and VAN GRAAF-EILAND, Circuit Judges, and OWEN, District Judge.*

VAN GRAAFEILAND, Circuit Judge:

Following a jury trial in the United States District Court for the Western District of New York, Walter R. Conlin was convicted on eight counts of willfully preparing false and fraudulent Federal income tax returns in violation of 26 U.S.C. § 7206(2). He was also convicted of destroying tax returns filed with the Small Business Administration (18 U.S.C. § 2071(a)) and of submitting to the SBA a copy of an income tax return which contained false and fraudulent statements. (18 U.S.C. § 1001). We affirm appellant's convictions on all counts.

Appellant is a licensed public accountant and the sole proprietor of the Southern Tier Accounting and Tax Bureau in Corning, New York. Between 1972 and 1974, he assisted various clients in the preparation of their Federal income tax returns. The information for these returns was secured from worksheets prepared by the clients, personal interviews and returns from previous years. The Government's proof relative to § 7206(2) consisted largely of the testimony of appellant's clients that they had submitted accurate information to him and that this had not been incorporated in the returns; that false deductions had been claimed and legitimate deductions padded. Although Conlin gave detailed explanations for the discrepancies, he was convicted on eight of the thirteen counts with which he was charged.

■ Challenging the sufficiency of the evidence to support his conviction, appellant contends that the Government's proof disclosed only "errors made by an overworked and understaffed taxpreparer". This argument is completely without merit. The trial judge instructed the jury that appellant could not be convicted unless he acted "with criminal or evil intent" and that his conduct was not willful if he acted with "negligence or carelessness, or mistake, or innocently, or even with gross negligence or gross carelessness. . . ." This charge comported with the willfulness standard prescribed in *United States v. Pomponio*, 429 U.S. 10, 11, 97 S.Ct. 22, 50 L.Ed.2d 12 (1976) and adequately informed the jury of the quality of evidence needed to convict. Such evidence was present in abundant quantity. That appellant was more than simply careless is indicated by both the frequency and similarity of his misstatements. *See United States v. Herskovitz*, 209 F.2d 881, 884 (2d Cir. 1954); *United States v. McKee*, 456 F.2d 1049, 1050 (6th Cir.), *cert. denied*, 407 U.S. 910, 92 S.Ct. 2436, 32 L.Ed.2d 684 (1972). The proof established a pattern of overstated medical expenses, interest expenses and casualty losses, *see United States v. Tager*, 479 F.2d 120, 122 (10th Cir. 1973), *cert. denied*, 414 U.S. 1162, 94 S.Ct. 924, 39 L.Ed.2d 115 (1974), and unusually high service fees based on the excessive refunds which followed. It was sufficient to support appellant's conviction on all eight counts.

The charge of destroying government documents stems from an incident which took place on January 18, 1974 at the Elmira office of the SBA. In the aftermath of Hurricane Agnes, Conlin assisted many of his clients in obtaining disaster relief loans from the SBA; and, for this purpose, he accompanied one Thomas Gill to a meeting in Elmira with SBA official James Cristofero. Cristofero testified that he showed Conlin and Gill copies of Gill's income tax returns which had been submitted to the SBA on January 4, 1974 in support of Gill's application for a disaster relief loan and requested assurance that the originals had been filed with the IRS. He then asked them to sign the copies—Gill as the taxpayer and Conlin as the preparer. When both had signed, Cristofero gave Conlin a memorandum stating that the SBA would be verifying the information on the returns with the IRS, whereupon Conlin grabbed the signed copies and put them in his briefcase. He ignored Cristofero's demand for their return, and, despite a warning that he

* Of the Southern District of New York, sitting by designation.

was destroying government property, began to tear them up and stuff the pieces in his clothing.

At this point, two FBI agents, summoned by Cristofero, arrived and witnessed Conlin destroying the documents. When they asked Conlin what he was doing, he did not respond. He was then arrested and given appropriate *Miranda* warnings. FBI Agent Bucher testified that, about an hour later, Conlin, suddenly and without solicitation, broke his silence. He told Bucher that the documents he had destroyed were not submitted to the SBA on January 4 but that he had brought them with him that same day. When the torn pieces were recovered and pieced together, it was discovered that they overstated the amount of Mr. Gill's disaster loss by more than $100,000.

■ Relying upon *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), Conlin contends that the Government erred in introducing testimony concerning his silence. We disagree. The first mention of Conlin's silence came during the Government's direct examination of Mr. Cristofero, when he was recounting the events surrounding Conlin's seizure of the tax returns. He testified that he asked Conlin what he was doing, told him that destroying government documents was a crime, and that Conlin said nothing. Cristofero further testified that he then called Mr. McDevitt, another SBA official, into his office. When asked whether Conlin said anything to Mr. McDevitt, Cristofero replied, "[H]e may have said something, but nothing that I can recall." During the cross-examination of Mr. Cristofero, Conlin's counsel went squarely to the issue of what was said by Conlin to the witness or to the FBI, seeking an admission that Conlin had from the outset told Cristofero that he had brought the documents with him to the office that day and that he intended merely to leave with what he had brought. This was the version later testified to by Conlin himself.

When it became apparent that Conlin was adopting the position that he had spoken throughout the episode and had told

both SBA and FBI officials that he had brought the documents with him on January 18, the U.S. Attorney brought out what he understood to be the facts. FBI Agent Rudy testified that, when he and his partner, Agent Bucher, arrived at the SBA offices, they asked Conlin what he was doing and he did not respond. Rudy testified that Conlin was then arrested, given his *Miranda* rights, and continued to remain silent. Bucher corroborated Rudy's testimony concerning Conlin's silence but stated that, about an hour after his arrest, Conlin voluntarily broke his silence and offered his exculpatory version of the events.

Appellant's contentions concerning the making of exculpatory statements raised an issue which the Government was entitled to meet. It was Conlin's counsel who propounded the theory that Conlin had spoken throughout the incident and had maintained from the outset that he had brought the items with him that day. "Having thus raised the question . . ., [appellant] opened the door to a full and not just selective development of that subject." *United States v. Fairchild,* 505 F.2d 1378, 1383 (5th Cir. 1975). The better course for the trial judge would have been to caution the jury that the evidence of Conlin's silence after receiving his *Miranda* warnings was being received solely to rebut Conlin's version of the incident, and to instruct that a defendant's decision to remain silent, in reliance on his constitutional rights, is not in itself indicative of guilt and could not be considered for that purpose. However, the admission of this evidence under the circumstances here did not deprive Conlin of a fair trial.

■ Appellant was also convicted of making false representations to the SBA in connection with his own application for a disaster relief loan. The Government's proof showed that in January 1973 appellant submitted a loan application, attached to which was a copy of an income tax return dated April 2, 1972. This return substantially overstated the amount of appellant's estimated tax payments. Moreover, the original had not been filed with

the IRS. In fact, Conlin did not file a 1972 return until October 1975. The evidence, viewed in the light most favorable to the Government, *United States v. Barash,* 412 F.2d 26, 31 (2d Cir.), *cert. denied,* 396 U.S. 832, 90 S.Ct. 86, 24 L.Ed.2d 82 (1969), was more than ample to support the jury's finding of guilty on this count.

Appellant advances several other arguments for reversal, only two of which merit comment. The last witness called by the Government was an IRS agent who had prepared a chart summarizing the testimony of Conlin's taxpayer clients. This is a common procedure whose use we have repeatedly approved. *See, e. g., United States v. Silverman,* 449 F.2d 1341, 1346 (2d Cir. 1971), *cert. denied,* 405 U.S. 918, 92 S.Ct. 943, 30 L.Ed.2d 788 (1972). Defense counsel was given ample opportunity to examine the chart prior to its being received in evidence. His only objections to it were based on its failure to be keyed to the exhibits, its alleged inclusion of a number of evidentiary items outside the indictment and his dissatisfaction with the heading of a column entitled "Adjustment", which the attorney thought should have been entitled "Correct Amount". These objections were properly overruled. Copies of the exhibit were then distributed to the jury to assist them in following the testimony of the witness.

The court subsequently discovered during the cross-examination of the witness that a column in the exhibit entitled "Amount Per Evidence" was actually the amount that the IRS agent concluded would have been allowed in a civil audit of each of the thirteen returns. These amounts were, in almost every case, either substantial reductions from the amounts claimed, or a complete disallowance. Although the Judge had not permitted the witness to testify on this point, he refused to strike the exhibit which the jury had been examining during the testimony and which he felt did contain much pertinent information. Instead, he instructed the jury that:

. . . that chart has no independent existence or evidentiary value in and of itself. The evidentiary value which is to be given that chart is entirely dependent upon the basic testimonial or documentary proof upon which it is based, and upon the accuracy and credibility of the testimonial or documentary proof upon which the chart is based. It is to have no further function in this case.

As was stated in *Gordon v. United States,* 438 F.2d 858, 876 (5th Cir. 1971), *cert. denied,* 404 U.S. 828, 92 S.Ct. 63, 30 L.Ed.2d 56 (1971).

. . . when summaries are used . . . the court must ascertain with certainty that they are based upon and fairly represent competent evidence already before the jury. . . .

This, unfortunately, was not done, either upon the offer of the exhibit, or upon thereafter learning that portions were not supported by the record. In fact, the court left it up to the jury to determine what parts of the exhibit were supported and what were not.[1]

A chart submitted by the prosecution is a very persuasive and powerful tool

---

1. The court charged in this respect as follows:

The government introduced in evidence a chart—they call it a Summary Chart—in connection with the testimony of the expert from the Internal Revenue Service. That chart and the testimony of this expert had previously been discussed in chambers between myself and counsel for the government and counsel for the defendant. It was my understanding that the testimony of this expert witness from the Internal Revenue Service was to assemble the evidence regarding various items in dispute and was to present a chart which would show in graphic form, and would assemble in a paper the evidence which had been given about the disputed items throughout the course of this trial. It turned out on the testimony of this expert that he did not understand that that was to be his function at all. His understanding was, and the way the chart was prepared, was that he was to give his expert opinion about the deductibility of the disputed items rather than to assemble the evidence about the disputed items. The chart was then in evidence. I declined to strike the chart from evidence because some of the testimony regarding the chart was clearly admissible in evidence.

and must be fairly used, since, by its arrangement and use, it is an argument to the jury during the course of the trial. Here, the inadmissible portions were arguably quite damaging. A chart which for any reason presents an unfair picture can be a potent weapon for harm, and permitting the jury to consider it is error. *Steele v. United States*, 222 F.2d 628, 630 (5th Cir. 1955), *cert. denied*, 355 U.S. 828, 78 S.Ct. 39, 2 L.Ed.2d 41 (1957); *see also, Holland v. United States*, 348 U.S. 121, 127–28, 75 S.Ct. 127, 99 L.Ed. 150 (1954). We conclude, however, from a study of the entire record that in the circumstances of this case this error did not deprive appellant of a fair trial. Not only was the proof of appellant's guilt overwhelming, but of even more significance is the fact that the jury acquitted on five of the thirteen items with which the chart dealt. Given this, it would appear that the jury did not unduly rely upon this exhibit to the appellant's prejudice.

 Appellant also urges reversible error because of the failure of the District Judge to comply with the requirements of Rule 30, F.R.Crim.P. This rule provides that the parties may submit proposed jury instructions to the trial judge and that the trial judge shall inform counsel of its proposed action on the requests prior to their arguments to the jury. It also requires that, on request, counsel shall be given opportunity to make objection to the charge out of the presence of the jury. Although appellant's counsel submitted proposed instructions, the Court did not disclose its rulings prior to the summations. Appellant at no time objected to this procedure. Although District Judges should comply with the provisions of Rule 30, their failure to do so does not *ipso facto* mandate reversal, *Hamling v. United States*, 418 U.S. 87, 135, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974). Appellant's failure to object to the trial court's omission and his inability to demonstrate any prejudice resulting therefrom satisfy us that the error was harmless. *See United States v. Pommerening*, 500 F.2d 92, 101 (10th Cir.), *cert. denied*, 419 U.S. 1088, 95 S.Ct. 678, 42 L.Ed.2d 680 (1974); *United States v. Nalley*, 455 F.2d 259, 262–63 (6th Cir. 1972).

Appellant did not request the opportunity to voice his objections to the charge in the absence of the jury as required by Rule 30 and cannot now contend for the first time that this procedure should have been followed. Appellant's objections referred simply to numbered requests. Apparently he was satisfied to refer to the numbers in the jury's presence. In any event, no prejudice to appellant resulted from such reference.

Our review of the record satisfies us that appellant's numerous other assertions of errors are not meritorious. Accordingly, the judgment of conviction is affirmed.