**Murrell Toby HOCKENBURY, III, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Supreme Court of Kentucky.

May 2, 1978.

Jack Emory Farley, Public Defender, Larry H. Marshall, Asst. Public Defender, Frankfort, for appellant.

Robert F. Stephens, Atty. Gen., Barbara B. Edelman, Asst. Atty. Gen., Frankfort, for appellee.

JONES, Justice.

Hockenbury appeals from a judgment sentencing him to imprisonment for 30 years pursuant to a jury verdict finding him guilty of robbery in the first degree under the provisions of KRS 515.020. He was tried on three separate indictments charging him with robbery in the first degree. The jury found him guilty on two of the indictments and fixed his punishment at 15 years each. The jury was unable to agree on the third indictment and the court declared a mistrial. In conformity with the jury's verdict the trial court sentenced Hockenbury to serve the two 15-year sentences consecutively.

Hockenbury asserts that he is entitled to a reversal of his convictions on the grounds: (1) the trial court erred by allowing the prosecutor to question him concerning his silence as to an alibi at the time of his arrest, (2) his identification at trial was based on suggestive out-of-court identification procedures, and (3) the trial court's instruction on reasonable doubt was improper.

So that these issues may be placed in proper perspective, it is necessary for this court to briefly summarize the evidence.

The first indictment charged Hockenbury with committing first-degree robbery on December 6, 1976, at a Junior Food Market in Warren County, Kentucky, by using or threatening the use of physical force upon Ann Hayes while armed with a deadly weapon. The second indictment charged him with first-degree robbery of the Greentree Market on December 29, 1976, when he threatened the immediate use of physical force upon Mark Blankenbaker and was armed with a deadly weapon. A robbery at another Junior Food Market was the basis of the third indictment.

The convictions were on the first and second indictments. The jury was unable to reach a verdict on the third indictment and a mistrial was declared as to that charge.

The evidence adduced at trial was primarily identification testimony linking Hockenbury to the December 16th and December 29th robberies.

Ann Hayes was a cashier at the Junior Food Market on the night of December 16, 1976. At approximately 10:30 to 10:45 P.M., a man later described by Ann as being Hockenbury, entered the store. He asked if he could use the restroom and after so doing, walked over to the magazine rack. Ms. Hayes asked the customer if he needed help. At that point the man placed a silver .25 automatic pistol to her side and told her to put the money in a bag. She testified that the amount of money taken was $600.00. At the time of the robbery Ms. Hayes and Hockenbury were the only persons in the store. In her description to the police she said Hockenbury was wearing a gold jacket, dark pants, and tinted glasses. She positively identified Hockenbury at trial as the robber.

Ms. Hayes had also previously identified Hockenbury at a line-up conducted by the police on January 28, 1977. Subsequently, Ms. Hayes was working at another food store when two men came in. She recognized one of them as being Hockenbury. After the men left one of the other employees recognized Hockenbury's companion and gave his name and address to the police. Acting upon this information the police were able to locate Hockenbury. They conducted a line-up at which time Ms. Hayes identified Hockenbury as the person who had robbed Junior Food Market on December 16, 1976.

Vicky Evans, another employee of Junior Food Market, was sweeping the parking lot at the time of the robbery. She saw the man who committed the robbery, but could not describe him because of poor visibility. At another line-up, however, she testified that Hockenbury looked "most like the man who came to our store that evening."

Detective Lancaster testified that he found Hockenbury at the home of Alan Borders after he received the call from Ms.

Hayes. Lancaster testified that Hockenbury was informed of his rights in conformity with *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and voluntarily agreed to be placed in a line-up. Lancaster testified also that Ms. Hayes positively identified Hockenbury in the first line-up and that Ms. Evans selected him from the second line-up, but could not make a positive identification.

◼ Mark Blankenbaker, a clerk at the Greentree Market, identified Hockenbury in a photographic display on February 2, 1977. Blankenbaker testified that Hockenbury came in the Greentree Market with a group of other persons around 7:26 P.M. on December 29, 1976, and that Hockenbury remained behind when the others left. Hockenbury then asked Blankenbaker about some seafood and then sought permission to use the phone. As Blankenbaker turned around, Hockenbury had a silver-plated gun aimed at him. Hockenbury then took cash and food stamps from the Greentree Market. Blankenbaker described the robber as wearing a floppy hat, vinyl jacket, and dark pants. He further described him as being 6' to 6'1" tall and his weight as approximately 184 lbs. He testified also that Hockenbury had "thick, curly, brown hair," and that he was able to observe Hockenbury for 10 to 12 minutes. Blankenbaker was able to make positive identification of Hockenbury as the robber during a photographic display. Detective Payne testified that about 30 minutes before the Greentree robbery he observed Hockenbury going toward the Greentree Market dressed in the manner described by Blankenbaker. At the conclusion of all of the evidence offered by the Commonwealth, counsel for Hockenbury moved for a directed verdict. That motion was overruled. Hockenbury testified in his own behalf and presented a defense of alibi. Jo Milby testified that she, Hockenbury, and Jan and Ron Gray were playing Yatzee in her trailer the evening of December 16, 1976. The Grays were not certain as to the date, but testified they were at Jo's trailer on the evening of either December 15th or December 16th. Hockenbury's father and sister each testi-

fied that he was at home having dinner with them on the evening of the Greentree robbery. The Commonwealth's Attorney questioned Hockenbury as to why he didn't explain his whereabouts on the robbery dates when first identified by the witnesses. Hockenbury's counsel made no objection to that line of questioning. Detective Lancaster was called as a rebuttal witness and testified that Hockenbury at the time of his arrest said he could not remember where he had been on the dates in question. Hockenbury had first said he was not in Bowling Green, but then according to Lancaster, he admitted that he was there.

The Commonwealth's cross-examination of Hockenbury was in part directed at his failure to give an alibi at the time of his arrest. In his closing argument the Commonwealth's Attorney bemoaned the fact that Hockenbury's alibi was first offered at trial. This court has expressed its disapproval of the use of post-arrest silence to impeach a defendant. *Niemeyer v. Commonwealth*, Ky., 533 S.W.2d 218 (1976); *Darnell v. Commonwealth*, Ky., 558 S.W.2d 590 (1977) (Lukowsky, J., dissenting); *Campbell v. Commonwealth*, Ky., 564 S.W.2d 528 (Rendered February 21, 1978). However, this case is unlike one in which a defendant stands mute at arrest and first offers an explanation or alibi at trial. It is abundantly clear from the record that Hockenbury at the time of his arrest was willing to discuss with the officers his whereabouts at the time of the robberies. Hockenbury was not silent, as he contends.

It is also clear from the record that trial counsel made no objection during the cross-examination of Hockenbury, nor did he object to the prosecutor's closing argument. This court has repeatedly held that absent proper objection, the failure to assert a claim in a trial court precludes its consideration on appeal. RCr 9.22; *Ferguson v. Commonwealth*, Ky., 512 S.W.2d 501 (1974).

◼ Hockenbury contends that a line-up and photographic display in which he was positively identified by Ms. Hayes and Blankenbaker tainted the in-court identifi-

cation. This argument is totally without merit and is refuted by the record. Ms. Hayes testified that Hockenbury was in the Junior Food Market approximately twenty minutes at the time of the robbery. She faced him squarely when he placed the gun at her side and demanded the money. Blankenbaker observed Hockenbury in the Greentree Market for approximately twenty minutes. He also looked into a gun barrel at the time he handed over the money. Common sense dictates that such experiences, and the actor's appearance is indelibly imprinted on the mind of the victims. Both Ms. Hayes and Mr. Blankenbaker positively identified Hockenbury prior to trial and in court. These identifications are sufficient for this court to conclude that the in-court identifications were based upon independent recollections of the witnesses.

■ Finally, Hockenbury argues that the trial court's instruction to the jury on reasonable doubt was improper. His counsel at trial submitted a reasonable doubt instruction to the court which stated:

"A reasonable doubt is a doubt based upon and generated by reason and common sense, the kind of doubt that would make a person of reasonable intelligence hesitate to act. A reasonable doubt exists whenever, after careful and impartial consideration of all the evidence in the case, you do not feel convinced to a moral certainty that the defendant is guilty of the charge."

The trial court rejected Hockenbury's instruction and gave a proper instruction that has been accepted by this court on many occasions. It is noted also that the trial court followed the reasonable doubt instruction set out in Palmore, *Kentucky Instructions to Juries*, § 11.01. In *Evans v. Commonwealth*, Ky., 474 S.W.2d 370 (1971), this court was confronted with the argument by the defendant much like that made by Hockenbury. In *Evans, supra*, this court reaffirmed its position approving the instruction given in that case and this as to reasonable doubt.

This court is of the opinion that the trial court committed no error prejudicial to the rights of Hockenbury.

The judgment should be and it is affirmed.

All concur.