Murrell Toby HOCKENBURY, III, Petitioner-Appellee,

v.

Dewey SOWDERS, Respondent-Appellant.

No. 82–5140.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 14, 1983.

Decided Sept. 26, 1983.

Rehearing and Rehearing En Banc Denied Nov. 7, 1983.

**156**

Steven L. Beshear, Atty. Gen. of Ky., James L. Dickinson, Sp. Asst. Atty. Gen. (argued), Frankfort, Ky., for respondent-appellant.

Larry H. Marshall, Asst. Public Advocate, Frankfort, Ky., for petitioner-appellee.

Before KEITH, KENNEDY and WELL-FORD, Circuit Judges.

CORNELIA G. KENNEDY, Circuit Judge.

Respondent appeals from an order of the District Court granting appellee's petition for a writ of habeas corpus. 28 U.S.C. § 2254. The District Court found that Kentucky had violated appellee's fifth amendment right to remain silent and that appellee's failure to object to the offending testimony and argument was excused under *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Finding that appellee was not in fact silent and that this case is controlled by *Anderson v. Charles,* 447 U.S. 404, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980), we reverse.

On December 16 and December 21, 1976, two food markets in Warren County, Kentucky were robbed by a gunman. On January 28, 1977, appellee was questioned by the Bowling Green, Kentucky police department, after receiving *Miranda* warnings, about his whereabouts and activities at the time of the robberies. Appellee initially stated that he was not in Kentucky at the time, but was in Utah. He was then confronted with a police report wherein he had stated that he was robbed in Bowling Green approximately one week before the December 16 robbery. After seeing this report, appellee told the police he had in fact returned to Bowling Green before the time of the two robberies. Appellee talked with the officers, including Detective Lancaster, at length, as well as with his father, about his activities in and around Bowling Green at the time, but informed the officers that he could not remember where in Bowling Green he was on December 16 or 21.

At trial, appellee took the stand and asserted the defense of alibi to each robbery. He testified in detail about his whereabouts in Bowling Green on the date of the robberies and whom he was with. Other witnesses corroborated his alibis. The Commonwealth attorney cross-examined appellee as to why he had not informed the officers of his alibis while being questioned on January 28 so that they could verify them while he was still at the police station. Defense counsel did not object to this line of questioning. Appellee responded that he was upset at the time and just could not think of where he was. On rebuttal, Detective Lancaster testified that appellee did not advise the police officers of his alibis during post-arrest interrogation, that he advised the officers that he could not recall where he was in Bowling Green at the time of the robberies and that, in face of proof to the

contrary, he had recanted his earlier assertion that he was not in Bowling Green but in Utah. Lancaster testified that he had talked to appellee at length about his activities in and around Bowling Green on the relevant dates. Defense counsel did not object to this either. During closing arguments, the Commonwealth attorney again raised the fact that appellee's alibis were first offered at trial. Again, there was no objection from defense counsel. The jury convicted appellee of both robberies.

Appellee filed a direct appeal to the Supreme Court of Kentucky and asserted, among other things, that he was denied due process by these allegedly improper questions and comments regarding what he characterized as his post-arrest right to remain silent. The Supreme Court of Kentucky affirmed appellee's convictions, in part, on the grounds that appellee had not elected to remain silent about his whereabouts at the time of the robberies and that consideration of this issue was precluded by defense counsel's failure to preserve it by proper objections. *Hockenbury v. Commonwealth,* 565 S.W.2d 448, 450 (Ky.1978).

Appellee then brought this habeas corpus action in which he asserts that his cross-examination, the rebuttal testimony of Detective Lancaster and the Commonwealth attorney's closing arguments infringed impermissibly on his right to remain silent under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), as applied by *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). Respondent has countered that no constitutional violation exists and that consideration of this issue is barred by appellee's failure to satisfy the "cause" and "prejudice" requirement of *Wainwright v. Sykes, supra,* and *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). In *Hockenbury v. Sowders,* 620 F.2d 111 (6th Cir.1980), *cert. denied,* 450 U.S. 933, 101 S.Ct. 1395, 67 L.Ed.2d 367 *reh'g denied,* 451 U.S. 933, 101 S.Ct. 2011, 68 L.Ed.2d 320 (1981), this Court

reversed the initial decision of the District Court granting appellee's habeas petition and remanded for an evidentiary hearing on the "cause" requirement of *Wainwright.*

At the hearing on remand appellee called defense counsel as his witness who testified that alibi was appellee's only defense, that he was generally conversant with the area of law surrounding *Doyle* but had not researched this particular issue on the day of trial and could not have cited *Doyle,* and that he was under the impression that an accused had to remain completely silent to be entitled to *Doyle* protection. As a justification for not objecting to any of the three offending actions, defense counsel testified that he did not see any merit to an objection under the law as he understood it and that it was his judgment not to unduly emphasize the Commonwealth attorney's questions and comments for tactical reasons. When asked a hypothetical question by the magistrate, to whom the case had been assigned for the evidentiary hearing, defense counsel replied that *"if . . . [he] was wrong on Doyle, . . . [he] was wrong to remain silent [for tactical reasons]."* In finding "cause" for defense counsel's failure to object, the District Court assumed a *Doyle* violation occurred citing *Rachel v. Bordenkircher,* 590 F.2d 200, 204 (6th Cir. 1978), and found that defense counsel admitted lack of knowledge of the law regarding the existence of a *Doyle* violation. This latter finding was based on the District Court's characterization of defense counsel's response to the magistrate's hypothetical question as an admission of ignorance. "Prejudice" and the absence of harmless error were presumed. The writ was again granted and this appeal followed.

Despite our earlier order of remand for a factual determination on "cause," we now decide this case primarily on legal grounds. Subsequent to our order of remand, the Supreme Court decided *Charles,* which impacts on the alleged *Doyle* violation in this case.[1] Furthermore, the Supreme Court de-

---

1. We were not free to make the analysis now undertaken because of this Circuit's decision in *Charles v. Anderson,* 610 F.2d 417 (6th Cir.

1979), *rev'd,* 447 U.S. 404, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980).

cided *Isaac* subsequent to the District Court's second grant of habeas corpus, elaborating on the "cause" and "prejudice" requirements of *Wainwright.*

In *Doyle,* the trial testimony of two criminal defendants contained exculpatory statements that they had not offered previously. Over their counsel's objections, the prosecutor cross-examined them about why, if the exculpatory statements were true, they had not offered them to the arresting officers after receiving *Miranda* warnings. The defendants had not made any post-arrest statements to the officers. The Supreme Court held that total silence in the wake of *Miranda* warnings is "insolubly ambiguous" and may be nothing more than the arrestee's exercise of *Miranda* rights. *Doyle, supra,* 426 U.S. at 617, 96 S.Ct. at 2244. The Supreme Court then determined that the use of such post-arrest silence in cross-examination violated due process because *Miranda* warnings assure an arrestee, at least implicitly, that this silence will not be used against him. *Id.* 618, 96 S.Ct. at 2245. Several courts have held that *Doyle* protections apply equally to total post-arrest silence and refusals to answer specific questions. *Booton v. Hanauer,* 541 F.2d 296, 298 (1st Cir.1976); *United States v. Ghiz,* 491 F.2d 599, 600 (4th Cir.1974).

In *Charles,* the Supreme Court refused to find a *Doyle* violation where a defendant elected to make post-arrest statements regarding his whereabouts, after receiving *Miranda* warnings, and where a prosecutor used these inconsistent post-arrest statements at trial to impeach exculpatory testimony offered at trial. The *Charles* Court held that *Doyle* did not apply to cross-examination that merely inquired into prior inconsistent statements. Such questioning makes no unfair use of silence, because a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent. *Charles, supra,* 447 U.S. at 408, 100 S.Ct. at 2182. The Court went on to state that as to the subject matter of the statements, such a defendant has not remained silent at all. *Id.* The *Charles* Court rejected the Sixth Circuit's bifurcation of the cross-examination in that

case into prior statements inconsistent with trial testimony and Charles' failure to tell the arresting officers the same story he told the jury. The Sixth Circuit had characterized the latter as an unconstitutional inquiry into Charles' post-arrest silence. *Charles* rejected the Sixth Circuit's definition, which found "silence" where facts omitted in one version of an event were included in another, arguably inconsistent, version of the same event. *Id.* 409, 100 S.Ct. at 2182. The Court also found that the questions proffered in *Charles* were not designed to draw meaning from silence, but to elicit an explanation for a prior inconsistent statement. *Id.; Grieco v. Hall,* 641 F.2d 1029 (1st Cir.1981).

■ We conclude, as did the Supreme Court of Kentucky, that appellee did not remain silent after receiving *Miranda* warnings. Appellee did make post-arrest statements as to his whereabouts at the time of the robberies, the same subject matter as his detailed testimony at trial. Initially, he stated he was in Utah, recanted upon presentation of his own motel robbery report dated prior to the time of one of the food market robberies, and then admitted he was in Bowling Green but could not remember where he was at the time. Appellee's statement, that he was in Bowling Green but could not remember where he was at the time, does not constitute ambiguous silence regarding the subject matter of his whereabouts or an ambiguous expression of his desire to remain silent as to future questioning. Rather, this statement is an elective, affirmative and substantive response to questioning directed toward his whereabouts in Bowling Green at the time of the robberies. An articulated failure to remember regarding the subject matter of whereabouts is not the same as total silence or a refusal to answer specific questions. Therefore, appellee was not silent within the meaning of *Doyle* and *Charles.*

Appellee's trial testimony that he was in Bowling Green with particular people at particular places at the time of the robberies is inconsistent with his post-arrest state-

ment that he did not remember where in Bowling Green he was at the time. Appellee's post-arrest statements and his trial testimony pertain to the same subject matter: his whereabouts. Statements about remembering and not remembering are substantive and mutually inconsistent on the issue of recollection of whereabouts. The statements placed appellee's credibility and recollection squarely at issue. The rehabilitative testimony elicited from appellee on cross-examination further reinforces that appellee was not, in fact, asserting his right to remain silent by his post-arrest statement. He testified that he could not remember where he was because he was very upset at the time and could not think. That his failure to remember may be explained, however, does not remove the inconsistency of not remembering at one point in time much closer to the event and remembering at another later time. The jury was properly left to resolve the credibility issue framed by his detailed recollection at trial of matters he could not recall when he made his post-arrest statement. Therefore, appellee's statements were inconsistent within the meaning of *Charles;* the statements pertained to the same subject matter, whereabouts, even though facts contained in one were omitted from the other.

■ Our conclusion that appellee's action amounted to inconsistent statements rather than ambiguous silence is supported by the reasoning of *Doyle* and *Charles,* as well as the facts of this case. At common law, individuals could be impeached by their failure to state a fact in circumstances in which that fact naturally would have been asserted. *Jenkins v. Anderson,* 447 U.S. 231, 238–40, 100 S.Ct. 2124, 2129–30, 65 L.Ed.2d 86 (1980). In *Jenkins,* the Supreme Court held that where no governmental action, such as *Miranda* warnings, induced a defendant to remain silent before arrest, no due process violation exists when pre-arrest silence is used to impeach that defendant's credibility. *Id. Accord, Fletcher v. Weir,* 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982). In contrast, an individual who has remained totally silent or has refused to answer spe-

cific questions after *Miranda* warnings have been given, may have been so induced because of the implicit assurance that this silence will not be used against him. *Doyle, supra,* 426 U.S. at 618–19, 96 S.Ct. at 2245. *Doyle's* deviation from the common law rule of *Jenkins* is necessary to give meaning to an arrestee's *Miranda* rights. The rationale of *Doyle* is inapplicable, however, where an arrestee speaks voluntarily after receiving *Miranda* warnings. Such an arrestee has not been induced to remain silent about the subject matter of his statements. *Charles, supra,* 447 U.S. at 408, 100 S.Ct. at 2182. This case is factually similar to *Charles* in that appellee spoke voluntarily after receiving *Miranda* warnings. Because he chose not to remain silent about the subject matter of the statements he later contradicted at trial, the rationale of *Doyle* is similarly inapplicable here as it was in *Charles.*

In deciding whether a prosecutor's comments were an impermissible comment on a defendant's right to remain silent, the *Charles* Court looked to the entire cross-examination colloquy. The Court found that the questions were not designed to draw meaning from silence to elicit an explanation for a prior inconsistent statement. *Id.* 409, 100 S.Ct. at 2182. In contrast, because there were no post-arrest statements in *Doyle,* the only possible reason for the prosecutor's comments would have been to draw meaning from the defendant's silence. *Doyle, supra,* 426 U.S. at 618–19, 96 S.Ct. at 2245. Here, as in *Charles,* appellee's inconsistent statements about his whereabouts placed his credibility and recollection in issue and legitimized the inquiry by the Commonwealth attorney about appellee's failure to tell the same story at trial and in his post-arrest statement. The questions clearly seemed designed, as appellant asserts they are, to raise the possibility of recent fabrication. In short, because of the nature of the cross-examination of appellee and rebuttal testimony of Detective Lancaster, the Commonwealth attorney's closing argument does not draw meaning from silence within the contemplation of *Doyle.* The presence of inconsistent statements di-

rected to the issue of whereabouts creates an issue of credibility which the prosecutor was entitled to explore.

For the above-mentioned reasons, we conclude that the District Court erred as a matter of law in its implicit determination that a *Doyle* violation had occurred. This case is covered by *Charles.*

■ Assuming, *arguendo,* that a controlling court would find that a *Doyle* violation occurred in this case, we conclude that the District Court erred in finding "cause" and "prejudice" under *Wainwright,* as elaborated upon in *Isaac.* The Supreme Court did not define "cause" in *Wainwright.* In *Isaac,* the Supreme Court stated that "cause" does not exist when defense counsel fails to object because he fails to perceive an imminent or recent change in the law. *Isaac, supra,* 456 U.S. at 130–134, 102 S.Ct. at 1572–75. Later discovery of a latent constitutional defect does not invariably render the original trial fundamentally unfair. *Id.* 131, 102 S.Ct. at 1573. The Court expressed hesitancy at adopting a rule that would make lack of extraordinary vision on the part of defense counsel a ground for "cause." *Id.* Instead, failure of defense counsel to raise a constitutional objection *unknown* at the time of trial does not constitute "cause" within the meaning of *Wainwright* even though the "tools" to construct the constitutional claim were available at the time of trial. *Id.* 133, n. 42, 102 S.Ct. at 1574 n. 42. On the other end of the spectrum, the Sixth Circuit has found "cause" to exist where defense counsel's failure to object was due to an admission of lack of knowledge of a *known* rule of law by a controlling court. *Rachel, supra,* 203–04 (constructive notice of known rule of law by a controlling court.) [2] *Accord, Collins v. Auger,* 577 F.2d 1107, 1110 n. 2 (8th Cir. 1978); *Jiminez v. Estelle,* 557 F.2d 506, 507 (5th Cir.1977).

In this case, it cannot be said that defense counsel's failure to object was due to an admission of lack of knowledge of a known rule of law by a controlling court. Appellee's defense counsel never testified that he did not know the rule of *Doyle;* he simply responded to a hypothetical that if he was wrong on *Doyle,* he was wrong not to object. His response to this hypothetical cannot be bootstrapped into such an admission. Furthermore, unlike the total post-arrest silence in *Doyle,* appellee did make post-arrest statements as to his whereabouts at the time of the robberies. Rather than being factually on point, *Doyle* would have to evolve or be extended to accommodate this factual situation. The questionable application of *Doyle* to fact situations where some post-arrest statements are made is highlighted by *Charles,* which found *Doyle* inapplicable under the facts of that case. As a matter of reasoning, there is little need for *Doyle* protection where an accused has not been induced to remain silent on the subject matter of his statements. Assuming, *arguendo,* that a controlling court would find that a *Doyle* violation occurred under these facts, the facts and reasoning of *Doyle* are sufficiently different to preclude a determination that *Doyle* constituted a known rule of law by a controlling court at the time of trial as required by *Rachel.* Instead, this case is more akin to *Isaac,* where the Supreme Court refused to find "cause" where a constitutional objection was unknown at the time of trial although the tools to construct the constitutional challenge were present.

The "cause" and "prejudice" requirement of *Wainwright* is in the conjunctive. Not finding "cause" in this case, we need not address the issue of prejudice. Similarly, the issue of harmless error need not be reached.

For the above-mentioned reasons the decision of the District Court is reversed and

---

**2.** Although *Rachel* speaks only in terms of "lack of knowledge of the law," the further qualifications enumerated in this opinion are required by the facts of *Rachel,* where defense counsel swore by affidavit that they failed to object due to inattention, inexperience and lack

of knowledge of the law when the factual situation was on point with *Doyle,* a known rule of law by a controlling court, the Supreme Court's position in *Isaac* and the case law of other circuits.

the petition for a writ of habeas corpus denied.

KEITH, Circuit Judge, dissenting.

I respectfully dissent. I cannot agree with the majority's holding that this case is controlled by *Anderson v. Charles,* 447 U.S. 404, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980). In my opinion, the district court was correct in granting appellee's writ of habeas corpus in light of *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976).

In *Doyle v. Ohio, supra,* the Supreme Court ruled that a habeas petitioner's post-arrest silence after receipt of *Miranda* warnings may not be used for impeachment purposes. The Court held that it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered.

Thus, the impropriety of the prosecution's conduct in the present case becomes clear. The original trial record is replete with instances where the prosecution, during cross-examination, rebuttal testimony and closing argument, sought to have the jury draw inferences of guilt from the petitioner's silence after being arrested. This is exactly the type of prosecutorial misconduct which *Doyle* seeks to prevent.

*Anderson v. Charles,* 447 U.S. 404, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980), which is cited by the majority as controlling authority, has no application to the present case. Unlike the present case which involves references by the prosecution to the petitioner's silence, *Anderson* involved the use of prior inconsistent statements by the prosecution for impeachment purposes. As the district court correctly pointed out, the Supreme Court's concern in *Anderson* was that the defendant's silence was used to elicit an explanation for a prior inconsistent statement. This differs from the present case where the prosecution sought to have an impermissible inference of guilt drawn from the petitioner's silence.

Moreover, the district court was also correct in deciding that the failure of defense counsel to object to the prosecutor's references to the petitioner's silence met with

the "cause and prejudice" standard of *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). *See also United States v. Frady,* 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). Defense counsel admitted in the evidentiary hearing before the magistrate that his failure to object to the prosecution's conduct was attributable to his lack of knowledge about *Doyle* violations. This court has previously held that lack of knowledge meets the "cause" standard of *Wainwright. See Rachel v. Bordenkircher,* 590 F.2d 200, 204 (6th Cir.1978).

Finally, the petitioner was sufficiently prejudiced as a result of the prosecution's misconduct to meet the *Wainwright* "prejudice" standard. Improper references to an accused's silence by the prosecution have been previously held to be an error of constitutional magnitude and have provided the basis for the reversal of a guilty verdict. *See, e.g., Minor v. Black,* 527 F.2d 1 (6th Cir.1975); *United States v. Curtis,* 644 F.2d 263 (3rd Cir.1981).

Accordingly, I would affirm the judgment of the district court granting the petitioner's writ of habeas corpus.