**UNITED STATES of America, Appellee,**

v.

**Ira Paul CITRON, Defendant-Appellant.**

**Nos. 340, 341, Dockets 85–1253, 85–1269.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 30, 1985.

Decided Feb. 7, 1986.

---

Jules Ritholz, New York City (Lawrence S. Feld, Marjorie B. Landa, Kostelanetz & Ritholz, New York City, of counsel), for defendant-appellant.

Patricia A. Pileggi, Asst. U.S. Atty., Brooklyn, N.Y. (Raymond J. Dearie, U.S. Atty., Mary McGowan Davis, Asst. U.S. Atty., Brooklyn, N.Y., of counsel), for appellee.

Before MANSFIELD, MESKILL and CARDAMONE, Circuit Judges.

MANSFIELD, Circuit Judge:

Ira Paul Citron appeals a judgment, entered in the Eastern District of New York after a jury trial before Judge Leonard D. Wexler, convicting him of income tax evasion and filing false income tax returns. The jury found Citron guilty of one count of income tax evasion, 26 U.S.C. § 7201,[1] for the year 1978 (Count 2), and two counts of filing false income tax returns, 26 U.S.C. § 7206(1),[2] for the years 1977 and 1979 (Counts 4 and 6). It acquitted him of two income tax evasion counts relating to his 1977 and 1979 returns (Counts 1 and 3), and three counts of aiding and assisting the preparation of false returns filed by his parents during the period from 1977 through 1979, 26 U.S.C. § 7206(2) (Counts 7 through 9).[3]

We vacate the convictions for violation of § 7206(1) and remand with directions to dismiss because, as submitted to the jury, the factual elements of the § 7201 counts were substantially identical to those of the lesser included § 7206(1) counts and no rational basis existed for acquitting Citron on the § 7201 counts while convicting him on the § 7206(1) charges. The § 7201 conviction is reversed and remanded for a new trial because the district court erred in admitting into evidence a summary chart containing figures not demonstrably supported by the evidence.

Citron (sometimes referred to herein as "Ira" to distinguish him from his father "Joseph"), a stock broker at E.F. Hutton & Co., allegedly underreported his income and tax due during the years 1977–79 in the following amounts:

1. Title 26 U.S.C. § 7201 provides:

"**§ 7201. Attempt to evade or defeat tax**

"Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000 ($500,000 in the case of a corporation), or imprisoned not more than 5 years, or both, together with the costs of prosecution."

2. Title 26 U.S.C. § 7206(1) provides in pertinent part:

"**§ 7206. Fraud and false statements**

"Any person who—

"(1) **Declaration under penalties of perjury.**—Willfully makes and subscribes any return, statement, or other documents, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter;

\* \* \* \* \* \*

"shall be guilty of a felony and, upon conviction thereof, shall be fined not more than $5,000, or imprisoned not more than 3 years, or both, together with the costs of prosecution."

3. The district court sentenced Citron to 18 months imprisonment, a fine of $10,000, and a $50 special assessment for the violation of § 7201, and concurrent terms of five-year probation periods and $50 assessments on each of the two § 7206(1) convictions.

| | Income Shown on Return | Tax Due Shown on Return | Alleged Income | Alleged Tax Due |
|---|---|---|---|---|
| 1977 | $21,220 | $2,209 | $ 32,556.08 | $ 5,460 |
| 1978 | $24,134 | $3,169 | $113,605.05 | $36,851.99 |
| 1979 | $42,332 | $9,508.76 | $ 83,584.96 | $29,274.63 |

The government sought to prove unreported income by using the "cash expenditures" method. *See United States v. Mastropieri*, 685 F.2d 776, 778 n. 2 (2d Cir.), *cert. denied*, 459 U.S. 945, 103 S.Ct. 260, 74 L.Ed.2d 203 (1982); *United States v. Gay*, 567 F.2d 1206 (2d Cir.1978); *United States v. Bianco*, 534 F.2d 501 (2d Cir.), *cert. denied*, 429 U.S. 822, 97 S.Ct. 73, 50 L.Ed.2d 84 (1976); *United States v. Fisher*, 518 F.2d 836 (2d Cir.), *cert. denied*, 423 U.S. 1033, 96 S.Ct. 565, 46 L.Ed.2d 407 (1975); *Taglianetti v. United States*, 398 F.2d 558, 562 (1st Cir.1968), *aff'd*, 394 U.S. 316, 89 S.Ct. 1099, 22 L.Ed.2d 302 (1969). This method is a variant of the "net worth" method, which was sanctioned by the Supreme Court in *Holland v. United States*, 348 U.S. 121, 124–25, 75 S.Ct. 127, 129–30, 99 L.Ed. 150 (1954), where the Court recognized that the special problems faced in proving income tax violations justify methods of indirect proof, subject to close judicial scrutiny. Under the "cash expenditures" method, after taking into account the amount of resources the taxpayer had on hand at the beginning of a period, the income received by the taxpayer for the same period is compared with his expenditures that are not attributable to his resources on hand or non-taxable receipts during the period. A substantial excess of expenditures over the combination of reported income, non-taxable receipts, and cash on hand may establish the existence of unreported income.[4]

As a first step in preparing the present case the government conducted an investigation and analysis, undertaken by Internal Revenue Service (I.R.S.) Special Agent Levy and Revenue Agent Perrotta, of Ira's

apparent sources of income and expenditures. The government calculated that Citron began 1977 with $24,412.27. Its analysis showed that Ira spent $78,928.59 in 1977, $127,262.38 in 1978 and $143,627.81 in 1979.

In arriving at these figures Agent Levy checked bank accounts, insurance coverage, tax returns, wage records, doctor's records, possible loan sources and safe deposit box holdings. Levy also searched real estate records to determine if Citron bought or sold real estate during or prior to the three-year period. Similar research was undertaken relating to the finances of Ira's parents, Joseph and Rose Citron.

The district court admitted into evidence a summary chart, prepared by Agent Perrotta, based on Agent Levy's research. The chart lists various items of expense and income and sets forth the amounts which the government maintained were received and spent by Ira. Next to each item on the chart Agent Perrotta noted the exhibits relied upon in arriving at the figures.

The government also offered underlying evidence regarding the sources of Ira's unreported income and his system of concealing earnings. Three witnesses testified that Ira managed a bookmaking operation. From the fall of 1976 through 1978 Charles Stockley and several friends incurred $20,000–$30,000 in gambling losses which were paid by check or cashier's check sent to Ira at his E.F. Hutton address. Fred Willey placed bets on football games for three or four months in 1978, losing approximately $2,000 to Citron. Finally, Alphonse Bottino placed bets in 1979 and 1980 and also paid his losses to Ira at E.F. Hutton. Ira's name appeared on the checks for winnings that Bottino received.

Albert Weiss, a stationery store employee, made weekly payments of $75 to Ira to repay a 1975 loan of $2,500. Checks made

---

4. The government also utilized, in part, the specific items method. *See United States v. Marabelles*, 724 F.2d 1374, 1377 n. 1 (9th Cir.1984) (citing *United States v. Horton*, 526 F.2d 884, 886 (5th Cir.), *cert. denied*, 429 U.S. 820, 97 S.Ct. 67, 50 L.Ed.2d 81 (1976)). The evidence of Citron's gambling enterprise and loan to Albert Weiss suggested sources of the unreported income. But no claim is made that this evidence was sufficient to obviate the need for proof under the cash expenditures method.

out by Weiss to cash or Ira Citron totalled $4,900 and were deposited into Ira's accounts.

Ira maintained five stock accounts at E.F. Hutton in the names of his parents, Joseph and Rose Citron, into which more than $245,000 was deposited between 1977 and 1979. Deposits included Ira's paychecks and other checks made payable to him. During the three-year period only five of the deposits were items made payable to Joseph and Rose Citron and two of these deposits were payments made in return for the purchase of a stamp collection belonging to and sold by Ira. Ira also drew on the accounts. In 1979 he asked a friend to cash a $34,000 check payable to Rose Citron drawn on one of the accounts. The interest, dividends and capital gains earned by the accounts, which totalled $41,244.74 for the three years were reported on Joseph and Rose Citron's joint returns and omitted from Ira's returns.

At trial Ira introduced a deposition of his father, Joseph Citron ("Joseph" herein), taken in 1984, to the effect that the father, a retired furniture store owner, had accumulated a cash hoard which reached a peak of approximately $365,000 in 1960, but which dwindled to $40,000 by the time of the deposition. Joseph stated that payments to his son Ira made during the period after 1973,[5] which constituted most of the $325,000 spent, were either gifts or deposits into the stock accounts. Joseph also testified that the bulk of the hoard represented cash which he had earned speculating in the stock market prior to 1929 and had stored in a shoebox and envelopes hidden around his home. The government countered the deposition by evidence that Joseph did not maintain a life style corresponding to the wealth he claimed to possess.[6]

On his tax returns for 1972 through 1978, Ira claimed his parents as dependents. In April 1980, after inquiries by the I.R.S., he filed his 1979 return which did not claim his parents as dependents. At the same time Ira's parents filed returns for the years 1977–1979 reporting the earnings from the E.F. Hutton accounts during that period. These returns were prepared at Ira's direction and based on data supplied by him to the accountant. Joseph and

---

5. Joseph Citron expressed uncertainty as to when he made payments to his son. He stated that he began giving gifts to Ira Citron several years after he moved to Florida in 1973:

  "Q: How long had you been in Florida when you started to give substantial amount[s] of ah, cash to Ira?
  "A: [19]73 I got there, maybe '77, '78, '79.
  "Q: Alright
  "A: In that neighborhood
  "Q: Right. Was it even as early as '76?
  "A: It might have been"

6. Over the previous 50 years Joseph purchased modestly priced homes with mortgages in Long Beach, New York, and later in West Palm Beach, Florida, and rented out an apartment in his Long Beach home for $160 a month in the mid-1960's. In 1928, he purchased the Long Beach home for $11,990 subject to a $6,000 mortgage, at a time when he claimed to possess $275,000. In 1973 the West Palm Beach apartment was purchased in the name of Ira for $14,250 subject to a mortgage for $9,000, at a time when Joseph claimed to have $300,000. In 1978 the West Palm Beach apartment was sold for $23,500 and a condominium in Boca Raton purchased for $34,500 in the name of Ira, paid for by money in an E.F. Hutton account in Joseph's name. Joseph and Rose Citron used both the West Palm Beach and Boca Raton apartments as residences. Ira deducted on his income tax returns the state real estate taxes paid on the West Palm Beach apartment. He maintained at trial that Joseph and Rose Citron were the real owners of the properties in Florida. Since the government apparently ascribed ownership of the apartments to Ira it did not challenge his deduction of taxes related to the properties.

Joseph maintained balances of approximately $1,000 in his savings accounts. Joseph testified that he loaned Ira the $35,000 proceeds from the sale of the Long Beach house in 1973, and acknowledged that he required his son to repay the money at the rate of $200 a month.

Moreover, sometime over the past five years Ira gave his father money to help him pay taxes. Although the record is not entirely clear, it appears that payments from Ira to Joseph were made to pay the taxes due when Joseph filed returns in 1980 claiming income from the stock accounts. Joseph's returns filed at that time claimed a total balance of $2,228 due. Prior to the filings in 1980, Joseph had not filed federal tax returns since 1972. He was not employed during that period but received social security benefits.

Rose Citron also-filed five gift tax returns reporting gifts totaling $30,000 to Ira and his family. These returns claimed that no tax was due.

## DISCUSSION

*The Propriety of Submitting Both the § 7201 Counts and the § 7206(1) Counts to the Jury*

Appellant contends that the district court erred in permitting the jury to consider both the tax evasion charges, 26 U.S.C. § 7201, and the charges of filing false returns, 26 U.S.C. § 7206(1). His argument rests on the principle that a lesser-included offense should not be submitted to the jury when, in light of the evidence presented at trial, the jury could not rationally acquit the defendant of the greater crime and convict him of the lesser included one. *See Hopper v. Evans*, 456 U.S. 605, 612, 102 S.Ct. 2049, 2053, 72 L.Ed.2d 367 (1982); *Keeble v. United States*, 412 U.S. 205, 208, 93 S.Ct. 1993, 1995, 36 L.Ed.2d 844 (1973); *Sansone v. United States*, 380 U.S. 343, 349–50, 85 S.Ct. 1004, 1009, 13 L.Ed.2d 882 (1965).

In *United States v. Harary*, 457 F.2d 471, 479 (2d Cir.1972), we held that in appropriate cases a defendant may invoke this principle to require that the lesser charge be withheld from the jury. But we cautioned that "we do not consider it to be reversible error to submit a lesser charge to the jury unless no 'disputed factual element' which distinguishes the offenses is present and, in addition, the defendant makes a timely motion or objection at trial," *Id.* at 479. The inquiry into whether such disputed factual elements separate the two offenses is appropriately undertaken at the close of evidence, *United States v. Harvey*, 701 F.2d 800, 807 (9th Cir.1983); *United States v. DeFabritus*, 605 F.Supp. 1538, 1545 (S.D.N.Y.1985), and its outcome must of necessity vary from case to case.

■ The disputed factual element test is designed to prevent the jury from considering both a greater charge and a lesser one

when there is no rational basis for differentiating between the two. Inconsistent jury verdicts rendered at the same time do not normally constitute grounds for reversal, *United States v. Zane*, 495 F.2d 683, 690 (2d Cir.), *cert. denied*, 419 U.S. 895, 95 S.Ct. 174, 42 L.Ed.2d 139 (1974). But when there is no distinction in a given case between the factual elements of both crimes, "to instruct on both offenses 'would only invite the jury to pick between the [greater and lesser] so as to determine the punishment to be imposed, a duty Congress has traditionally left to the judge.'" *Harary, supra*, at 478 (quoting *Sansone, supra*, 380 U.S. at 350 n. 6, 85 S.Ct. at 1009 n. 6 ); *United States v. Brown*, 551 F.2d 236, 239 n. 4 (8th Cir.1977).

Section 7201 has been described as "the capstone of a system of sanctions which singly or in combination were calculated to induce prompt and forthright fulfillment of every duty under the income tax law." *Spies v. United States*, 317 U.S. 492, 497, 63 S.Ct. 364, 367, 87 L.Ed. 418 (1943). The elements of a § 7201 violation are (1) willfulness, (2) the existence of a tax deficiency, and (3) an affirmative act constituting an evasion or attempted evasion of the tax. *See Sansone, supra* 380 U.S. at 351, 85 S.Ct. at 1010. We have also required that the tax deficiency be substantial. *United States v. Nunan*, 236 F.2d 576, 585 (2d Cir.1956), *cert. denied*, 353 U.S. 912, 77 S.Ct. 661, 1 L.Ed.2d 665 (1957); *United States v. Norris*, 205 F.2d 828, 829 (2d Cir.1953); *see United States v. Burkhart*, 501 F.2d 993, 995 (6th Cir.1974), *cert. denied*, 420 U.S. 946, 95 S.C.t 1326, 43 L.Ed.2d 424 (1975).

■ Section 7206(1) is a lesser-included offense of § 7201. *Cf. United States v. LoRusso*, 695 F.2d 45, 52 n. 3 (2d Cir.1982), *cert. denied*, 460 U.S. 1070, 103 S.Ct. 1525, 75 L.Ed.2d 948 (1983) (a charge is a lesser-included offense when "it is composed of fewer than all of the elements of the [greater] offense charged, and if all of its elements are elements of the [greater] offense charged"). It requires the willful making and subscribing to a tax return

that is false in a material matter. *See United States v. Hedman*, 630 F.2d 1184, 1196 (7th Cir.1980), *cert. denied*, 450 U.S. 965, 101 S.Ct. 1481, 67 L.Ed.2d 614 (1981). As in *United States v. Tsanas*, 572 F.2d 340, 343 (2d Cir.), *cert. denied*, 435 U.S. 995, 98 S.Ct. 1647, 56 L.Ed.2d 84 (1978), in this case "the criminal act charged was the filing of false income tax returns, [and therefore,] the only difference between the two offenses is that § 7201 requires proof of an intention to 'evade or defeat' a tax whereas § 7206(1) penalizes the filing of a false return even though the falsity would not produce tax consequences."

Appellant argues that in the present case this distinction between the two kinds of alleged violations is not supported by disputed facts and that the jury could not rationally have reached a different verdict on a § 7201 charge than on a § 7206(1) charge relating to the same year. More specifically, he contends that because the alleged false statements consisted solely of material underreporting of adjusted gross income, a guilty verdict on the § 7206(1) counts would necessarily mean that § 7201 was violated because of the direct relationship between adjusted gross income and tax due. *See United States v. Bender*, 606 F.2d 897 (9th Cir.1979). To support this view, appellant maintains that a "material" falsity, as required by § 7206(1), should be construed as one which results in a "substantial" tax due required for violation of § 7201. *See Burkhart, supra*, at 995; *Nunan, supra*, at 585; *Norris, supra*, at 829.

■ We have already rejected this argument in other cases. In *United States v. Greenberg*, 735 F.2d 29, 31–32 (2d Cir. 1984), we held that a misstatement resulting in "minimal underpayments" was material. We noted that the

"purpose of sec. 7206(1) is not simply to ensure that the taxpayer pay the proper amount of taxes—though that is surely one of its goals. Rather that section is intended to ensure also that the taxpayer not make misstatements that could hinder the Internal Revenue Service (IRS) in carrying out such functions as the verification of the accuracy of that return or a related tax return." 735 F.2d 31.

The Seventh Circuit has adopted the same approach. In *Hedman, supra*, at 1196, it stated that

"Section 7206(1) does not require that a false statement on an income tax return be substantial; it merely requires that the misstatement be material. This Court has previously held that false statements relating to gross income, irrespective of the amount, constitute a material misstatement in violation of Sec. 7206(1)." (Footnote omitted).

Thus it is clearly within the statutory scheme that a jury may find that a taxpayer omitted a material matter in violation of § 7206(1), but that the omission did not give rise to a violation of § 7201 because the defendant did not intend to evade a substantial tax.

However, our inquiry does not end with an examination of the statutes involved. Appellant maintains that, since his defense in this case was completely exculpatory, if the jury believed it he was entitled to acquittal on all counts, but if the jury rejected the defense its only rational choice was to convict on all counts. In other words, if the jury found that a material misstatement was made, a substantial tax would of necessity be due. The "disputed factual element" requirement does not turn exclusively on the defendant's defense but on whether a rational jury could find that the government had met its burden of proof on all elements of the lesser charge but failed to prove the greater. *See United States v. Markis*, 352 F.2d 860, 867 (2d Cir.1965). The government in the present case alleged that the underreporting resulted in understatements of tax due in the amounts of $3,251 in 1977, $33,682.99 in 1978 and $19,765.87 in 1979. A jury could not rationally find these amounts to have been insubstantial. Therefore, if the jury accepted the government's claimed underreporting, its only rational course was to return convictions for tax evasion.

The government maintains that the jury could have determined that smaller

amounts were unreported by accepting pieces of the government's case while rejecting other parts. However, Ira did not dispute the expenditures portion of the government's case. Rather he challenged its assertions about net worth—particularly cash on hand. The evidence offered in support of his claim that he had access to a cash hoard would, if believed, explain the *entire* amount alleged to be underreported. No theory was argued or evidence presented suggesting that the cash hoard was big enough to cover some of his expenditures but not others. Thus the jury could not reasonably have found that some underreporting occurred which was less than that alleged but too small to result in substantial tax evasion. Accordingly, a rational jury could not have both convicted Citron of underreporting, yet acquitted him of tax evasion. *See Bender, supra.*

Furthermore, because the evil *Harary* seeks to avoid is the placement of judicial functions in the hands of the jury, we must also examine the way the law was presented to the jury. The indictment alleged that in each of the years 1977 through 1979 Ira violated § 7206(1) by filing returns for himself and his wife which contained statements of adjusted gross income, when he "well knew and believed their adjusted gross income was *substantially* in excess" (emphasis added) of the stated amounts.[7] Accordingly, Judge Wexler charged the jury:

> "The false statement alleged in each of the [sec. 7206(1)] counts is that the total adjusted gross income reported on the return involved did not reflect *substantial* adjusted gross income received by the defendant. The Court instructs you that if this is so the error would be material as a matter of law." [8] (Emphasis added).

■ Thus, as presented to the jury the issue of materiality in the § 7206(1) counts was defined as requiring proof of underre-

porting of "substantial" adjusted gross income and therefore was identical to the proof required by § 7201. Although the statutory scheme may permit a finding in an appropriate case that a taxpayer made material false statements resulting in insubstantial tax consequences, which would permit a finding that § 7206(1) was violated even though § 7201 was not, the jury here was presented with no factual or legal basis for deciding the § 7201 and § 7206(1) counts differently. Accordingly, the two convictions under § 7206(1) must be vacated and remanded with directions that they be dismissed.

*Sufficiency of the Indictment*

■ Appellant's assertion that the district court erred in refusing to dismiss Counts 1, 2 and 3 of the indictment on the ground that they did not allege precise amounts of unreported income and tax due is rejected as meritless. Fed.R.Crim.P. 7(c) requires that "the indictment shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." We have held that "[w]here ... an indictment tracks the statutory language and specifies the nature of the criminal activity ... it is sufficiently specific to withstand a motion to dismiss." *United States v. Carr*, 582 F.2d 242, 244 (2d Cir.1978); *United States v. Salazar*, 485 F.2d 1272, 1277 (2d Cir.1973), *cert. denied*, 415 U.S. 985, 94 S.Ct. 1579, 39 L.Ed.2d 882 (1974).

The indictment here reiterated the statutory description of the offense and alleged all the required elements of the crime. Counts One through Three alleged that Ira "did wilfully and knowingly attempt to evade and defeat a *large part* of the income tax due and owing" and that Ira "well knew" that the tax due "was a sum *substantially* in excess" of the amount he reported on his return. (Emphasis added).

---

7. As lesser-included offenses the § 7206(1) counts could have been submitted to the jury even though not charged in the indictment. Fed.R.Crim.P. Rule 31(c); *United States v. Giampino*, 680 F.2d 898, 900 n. 1 (2d Cir.1982).

8. Judge Wexler correctly viewed the issue of materiality as an issue of law. *See Greenberg, supra.*

Thus it is clear that the grand jury did consider and reach a finding of probable cause that the amount of income underreported and tax due was substantial for each of the years in question. *Cf. United States v. Outler*, 659 F.2d 1306, 1310–11 (5th Cir.1981), *cert. denied*, 455 U.S. 950, 102 S.Ct. 1453, 71 L.Ed.2d 665 (1982).

The grand jury was not required to make further allegations as to the amounts of tax Ira sought to evade. The issue of whether a particular amount is substantial is normally a question for the jury. *United States v. Cunningham*, 723 F.2d 217, 230 (2d Cir.1983). This case therefore is unlike *Russell v. United States*, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962), where the indictment offered a *legal* conclusion, yet omitted the factual basis for the conclusion. In *Russell*, the indictment was insufficient as a matter of law because it provided the trial court with no basis for resolving a legal issue.

Furthermore, proof at trial need not include a precise amount of unreported income or tax due but is sufficient if it shows that the amounts of income underreported and tax due were "substantial". *See United States v. Costanzo*, 581 F.2d 28, 34 n. 7 (2d Cir.1978), *cert. denied*, 439 U.S. 1067, 99 S.Ct. 833, 59 L.Ed.2d 32 (1979); *United States v. Parr*, 509 F.2d 1381, 1385–86 (5th Cir.1975); *see also United States v. Cole*, 463 F.2d 163, 167 (2d Cir.), *cert. denied*, 409 U.S. 942, 93 S.Ct. 238, 34 L.Ed.2d 193 (1972) (variation between the amount of income underreported as alleged in the indictment and the amount proven at trial); *United States v. D'Anna*, 450 F.2d 1201, 1204 (2d Cir.1971) (variance between amounts of tax due as alleged in indictment and amounts proven at trial); *United States v. Eley*, 314 F.2d 127, 129–30 (7th Cir.1963) (same). Therefore, since the indictment need not allege that which is not part of the government's required proof, no exact figure need be stated in the indictment.

*Sufficiency of the Government's Prima Facie Case and Admissibility of the Summary Chart*

Appellant contends that the government failed as a matter of law to establish that he underreported his income for the years in question. The § 7201 conviction (Count Two) must be sustained if the proof, viewed in the light most favorable to the government, "is such that a jury, drawing reasonable inferences therefrom, may fairly and logically have concluded that the defendant was guilty beyond a reasonable doubt." *United States v. Barnes*, 604 F.2d 121, 157 (2d Cir.1979), *cert. denied*, 446 U.S. 907, 100 S.Ct. 1833, 64 L.Ed.2d 260 (1980). We find that the evidence supporting the conviction may well have been sufficient, but that it must be vacated because of the improper admission of a summary chart placed before the jury.

Under the cash expenditure method the government bears the burden of demonstrating "to a reasonable certainty" (i) expenditures during the period in question and (ii) the opening net worth of the taxpayer, including cash on hand. *See Bianco, supra*, at 504. However, net worth need not be established by a formal net worth statement. Rather, accurate inclusion of diminution of resources serves the function of enabling the jurors to determine if expenditures were financed by liquidation of assets, depletion of a cash hoard, or unreported income. *See Fisher, supra*, at 842 n. 7.

Appellant argues that the government failed to meet these burdens in several respects. First, he maintains that the government failed to prove net worth adequately, particularly cash on hand, for each of the years in question. In advancing this claim, he argues that the district court erred in admitting in evidence the government's summary chart specifying his alleged cash on hand. Absent this chart, appellant asserts, the government's case was fatally flawed by a failure to establish cash on hand.

Although formal proof of net worth is not required in a "cash expenditures" case, establishment of cash on hand is essential and recognized to be the most difficult component of proof in a tax prosecution by the net worth or cash expenditures methods. *See United States v. Grasso*, 629 F.2d 805, 807 (2d Cir.1980). In *Holland, supra*, 348 U.S. at 135–36, 75 S.Ct. at 135, the Court recognized the perils of inadequate evidence relating to taxpayers' cash on hand and noted that "[w]hen the Government fails to show an investigation into the validity of [defendant's claimed cash hoard], the trial judge may consider [the claims] true and the Government's case insufficient to go to the jury." In this case, the sufficiency of Agent Levy's investigation is clear and appellant does not claim that the government inadequately researched the truthfulness of his "hoard of cash" defense. Rather, he questions the manner in which the results of the inquiry were placed before the jury.

The government prepared a summary chart which listed Citron's cash on hand as $24,412.27 and identified government exhibits (Ex. Nos. 96, 98, 99, 100–104, 106, 107, and 117–122) as the source of this figure. The exhibits listed include documents relating to Ira's purchase of a condominium in Florida in 1973 (Ex. Nos. 96, 98, 103), average cost schedules for family budgets for the years 1973–1976 (Ex. Nos. 99–102),[9] credit card statements (Ex. No. 104), documents relating to the sale of Joseph and Rose Citron's home in Long Beach in 1973 (Ex. No. 106), an I.R.S. transcript describing Ira's tax payments and refund in 1974 (Ex. No. 107), Ira's tax returns from 1972–1975 (Ex. Nos. 117–120), a credit check by a credit card company (Ex. No. 121), and a statement of his salary in 1972 (Ex. No. 122).

At trial the government sought to introduce the summary chart containing and based on the $24,412.27 cash-on-hand figure without providing testimony explaining how cash on hand was calculated from the grab-bag of documents listed above. When defense counsel objected to the lack of foundation for the figure, the district court agreed, stating "I have never seen such playing with numbers and doubletalk and triple talk, which no one understands." Nonetheless, Judge Wexler admitted the chart in evidence on the theory that "if it is weak, cross examination will destroy it totally."

Although reliance on cross-examination may be appropriate in other contexts, the defendant here was entitled to greater protection. Summary charts should not be admitted unless a proper foundation is established connecting the numbers on the chart with the underlying evidence. Courts have long required that district courts ascertain that summary charts "fairly represent and summarize the evidence upon which they are based." *United States v. O'Connor*, 237 F.2d 466, 475 (2d Cir.1956); *see United States v. Price*, 722 F.2d 88, 91 (5th Cir.1983); *United States v. Keltner*, 675 F.2d 602, 606 (4th Cir.), *cert. denied*, 459 U.S. 832, 103 S.Ct. 71, 74 L.Ed.2d 71 (1982); *United States v. Conlin*, 551 F.2d 534, 538–39 (2d Cir.), *cert. denied*, 434 U.S. 831, 98 S.Ct. 114, 54 L.Ed.2d 91 (1977); *Gordon v. United States*, 438 F.2d 858, 876–77 (5th Cir.), *cert. denied*, 404 U.S. 828, 92 S.Ct. 139, 30 L.Ed.2d 56 (1971); *Conford v. United States*, 336 F.2d 285, 287–88 (10th Cir. 1964); *United States v. Altruda*, 224 F.2d 935, 938–39 (2d Cir.1955). Unless this requirement is met, the chart is more likely to confuse or mislead the jury than it is to assist it. *See* Fed.R.Evid. Rule 403. In this case, the summary chart contained a figure for cash on hand that was obviously the product of calculation. Yet the government provided no explanation, either in the

---

9. Ann Perzestzy, a Consumer Economic Specialist employed by the Community Council of Greater New York, testified that the median family budget tables were prepared by the Community Council in the ordinary course of its business, relying on data gathered by the U.S. Department of Agriculture, Bureau of Labor Statistics, the New York Department of Consumer Affairs and the Council's own research. Judge Wexler admitted the tables in evidence as generalizations, rather than evidence of what Citron and his family actually spent.

form of worksheets, testimony, or other methods of elucidation, showing how it derived the figure. The district court did not consider whether the chart was based on the evidence but instead noted that the chart was "doubletalk" and admitted it. In this respect the court abused its discretion. *See Conlin, supra,* at 539.

Our ruling that the chart was inadmissible does not mean that the government must provide detailed testimony stating the basis of each calculation undertaken when a summary chart is prepared. All that is required is enough explanation to allow the jury to see how the numbers on a chart were derived from the underlying evidence put before it. The adequacy of the explanation requires the court to exercise practical judgment in recognition of the fact that a jury usually consists of laymen, not mathematicians. *See Altruda, supra,* at 939.

We cannot label the error as harmless. *Kotteakos v. United States,* 328 U.S. 750, 764–65, 66 S.Ct. 1239, 1247–48, 90 L.Ed. 1557 (1946); *cf. Conlin, supra.* Nor can we, as was the case in *Conlin,* conclude that the "proof of appellant's guilt was overwhelming." *Id.* at 539. The jury's acquittal of Ira on six of the nine counts in the indictment does not indicate that it rejected the figures in the summary chart offered by the government. *Cf. id.* A higher cash-on-hand figure would have directly reduced the amount of income alleged to have been underreported and a lower figure would have had the opposite effect. Thus the seemingly arbitrary figures used in the government's chart were an important link in its case. Because the chart was the only computation of Ira's opening cash provided by the government,

its absence would have rendered proof of underreporting less certain and may well have altered the jury's calculation of the resources he received prior to the years in which his taxable income was in dispute.

■ Nor was the error adequately alleviated by Judge Wexler's instructions to the jury.[10] In *Holland,* the Supreme Court cautioned that

"[t]here is great danger that the jury may assume that once the Government has established the figures in its net worth computations, the crime of tax evasion automatically follows. The possibility of this increases where the jury, without guarding instructions, is allowed to take into the jury room the various charts summarizing the computations; bare figures have a way of acquiring an existence of their own, independent of the evidence which gave rise to them." *Holland, supra,* 348 U.S. at 127–28, 75 S.Ct. at 131; *Conlin, supra,* at 539.

Thus, when the figures on a summary chart are properly established, a cautionary instruction that the chart itself is not evidence may be sufficient to head off any misimpression by the jury. But when the figures on the chart have not been properly established and keyed to the chart, as was the case here, a cautionary instruction is inadequate.

■ The error in admitting the chart, while prejudicial enough to require reversal, is not sufficiently serious to call for dismissal of the tax evasion charge on the ground that proof of opening cash on hand was necessarily insufficient. *See United States v. Quinto,* 582 F.2d 224, 235 (2d Cir.1978); *United States v. Ruffin,* 575 F.2d 346, 358–59 (2d Cir.1978). For in con-

---

**10.** Judge Wexler instructed the jury that
"[a]ny chart or schedule presented to you by the prosecution or defense was prepared solely for the purpose of summarizing the facts claimed by the lawyers to have been proved by testimony, books, records and other documents which are in evidence. In other words, such a chart or schedule merely is the lawyer's pictoral summary of what he contends the evidence shows and is no better than the evidence on which it is based.

"Such charts and schedules, however, are not in and of themselves evidence or proof of any facts. They were used only as a matter of convenience. Under no circumstances may you consider them as independent evidence of anything.

"If you find that any chart or schedule does not correctly reflect facts shown by the evidence in the case, you should disregard it entirely."

sidering whether error is prejudicial, "[t]he inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by error". *Kotteakos, supra*, 328 U.S. at 765, 66 S.Ct. at 1248. In this case the jury may well have reached different conclusions if the summary chart had not been before it but, absent the chart, convictions would not have been unreasonable or irrational. *See United States v. LeRoy*, 687 F.2d 610, 616 (2d Cir.1982), *cert. denied*, 459 U.S. 1174, 103 S.Ct. 823, 74 L.Ed.2d 1019 (1983).

The government's investigation of Ira's resources was adequate and the documentary evidence was properly introduced into the record. The jury could infer from his bank records, loan applications, prior tax returns, credit card bills, and the like, that he did not have access to a cash hoard to finance his sizeable expenditures from 1977 to 1979. The government is not required to present an exact figure to show opening net worth with "reasonable certainty." *See Taglianette, supra*, at 565 (in expenditures case, burden of proof may be met without "precise figures" of opening and closing net worth). Moreover, our ruling does not preclude the government, upon a retrial of Count 2, from introducing a properly authenticated and fully explained chart keyed to and supported by admissible evidence.

Moreover, the government did not solely rely on the cash expenditures method of proof, but also offered evidence showing the sources of Ira's unreported income, namely his gambling operation, his loan to Albert Weiss and earnings on the stock accounts. The jury was entitled to consider this evidence in deciding whether underreporting occurred. *See Costanzo, supra*, at 33. As in *Mastropieri*, "the Government's proof ... was not simply of a naked increase in wealth or expenditures unaccountable by assets at the beginning of the series of tax years", but also included evidence of activity which generated the unreported income. *Mastropieri, supra*, at 785.

Appellant also contends that the government's case was insufficient as a matter of law because it attributed to him resources and income in Joseph and Rose Citron's stock accounts and since the jury acquitted him of aiding and assisting them in the preparation of false returns (Counts 7–9), it must have concluded that their returns were accurate. Because their returns claimed income from the stock accounts, the argument goes, the jury therefore found that the stock accounts belonged to his parents, rather than to him. Therefore, he urges, the government's calculations treating him as the owner of the stock accounts were insufficient. The weakness in this chain of reasoning lies in the well-settled principle that acquittal on one count "does not preclude the jury from reliance on facts relevant to that count in assessing the sufficiency of the evidence for conviction on a different count." *United States v. Elsbery*, 602 F.2d 1054, 1057 (2d Cir.), *cert. denied*, 444 U.S. 994, 100 S.Ct. 529, 62 L.Ed.2d 425 (1979); *see United States v. Ford*, 603 F.2d 1043, 1047 (2d Cir.1979) (inconsistency is within jury's prerogative); *United States v. Zane*, 495 F.2d 683, 690 (2d Cir.), *cert. denied*, 419 U.S. 895, 95 S.Ct. 174, 42 L.Ed.2d 139 (1974) (same). Here the jury could well have concluded, in finding appellant guilty of tax evasion, that the stock in his parents' accounts, and the income derived therefrom, belonged to him.

Thus there was sufficient evidence of opening cash on hand and of underreporting to sustain the § 7201 conviction (Count 2). However, the admission into evidence of the summary chart prepared by the government, which contained and relied on a seemingly arbitrary figure of $24,412.27 for cash on hand, constituted prejudicial error requiring a reversal of the conviction and a retrial of Count 2.

We find appellant's other contentions to be without merit.

## CONCLUSION

Citron's convictions for violations of § 7206(1) (Counts 4 and 6) are reversed and remanded with directions that they be dis-

missed. The conviction for violation of § 7201 (Count 2) is vacated and the charge is remanded for a new trial.