906 F.2d 53
 30 Fed. R. Evid. Serv. 452
 Robert FAGIOLA, as Executor of the Estate of Ernest T.
Fagiola, Plaintiff,
v.
NATIONAL GYPSUM COMPANY AC & S., INC., Armstrong World
Industries, Inc., f/d/a Armstrong Cork Co., The Celotex Co.,
individually and as successor-in-interest to Philip Carey
Manufacturing Co., Philip Carey Corp., Briggs Manufacturing
Co., Smith & Kanzler Corp., and Panacon Corp., Eagle-Picher
Industries, Inc., GAF Corporation, Nicolet, Inc.,
individually and successor-in-interest to Keasbey-Mattison
Co., Raymark Industries, Inc., individually and as
successor-in-interest to Raybestos-Manhattan, Inc.,
Owens-Corning Fiberglas Corp., U.S. Mineral Products Co.,
H.K. Porter Co., Inc., individually and successor to
Southern Textile Corp. and Southern Asbestos Co., The
Flintkote Co., Carey Canada, Inc., Fibreboard Corp., Rock
Wool Manufacturing Co., Inc., Owens-Illinois, Inc., Turner &
Newall, PLC., individually and as successor to
Keasbey-Mattison Corp., United States Gypsum Co., Dana
Corp., individually and as successor to Smith & Kanzler Co.,
and Victor Gasket Co., Certainteed Corp., TAF International,
Ltd., formerly Turner Asbestos Fibers, Ltd.,
Pittsburgh-Corning Corp., individually and as successor to
Unarco Ind., Defendants.
Robert FAGIOLA, as Executor of the Estate of Ernest T.
Fagiola, Plaintiff-Appellant,
v.
EAGLE-PICHER INDUSTRIES, INC., and Owens-Corning Fiberglas
Corp., Defendants-Appellees.
 No. 1067, Docket 89-9103.
 United States Court of Appeals,
Second Circuit.
 Argued March 30, 1990.
Decided June 14, 1990.
 
 Steven J. Phillips (Diane Paolicelli, Levy Phillips & Konigsberg, New York City, of counsel), for plaintiff-appellant.
 Franklin B. Velie (James M. Minamoto, Christy & Viener, New York City, of counsel), for defendant-appellee Owens-Corning Fiberglas Corp.
 Donna L. Harvey (Arthur D. Bromberg, Picillo Harvey Bromberg & Caruso, Fairfield, N.J., of counsel), for defendant-appellee Eagle-Picher Industries, Inc.
 Before OAKES, Chief Judge, WINTER, Circuit Judge, and PATTERSON, District Judge.*
 WINTER, Circuit Judge:
 
 
 1
 This is an appeal from a jury verdict in favor of the two defendants-appellees in a multiple-defendant asbestos case. The only issue concerns the admission of the testimony of, and documentary evidence prepared by, a "summary" witness regarding the sale of asbestos products to the General Dynamics Corporation. We conclude that the district court did not err in admitting this evidence and affirm.
 
 BACKGROUND
 
 2
 Appellant Robert Fagiola, as executor of the estate of his father Ernest T. Fagiola, brought this action in 1987 in the Southern District of New York. He claimed that his father's death from mesothelioma resulted from exposure to asbestos products manufactured by the various defendants. This exposure allegedly occurred when Ernest Fagiola, employed as a quality assurance engineer for Sperry Rand, inspected Sperry inertial guidance systems on submarines under construction at the General Dynamics Electric Boat Shipyard in Groton, Connecticut during the late 1950's and 1960's.
 
 
 3
 At a jury trial before Judge Sifton, the primary defense raised by Owens-Corning Fiberglas Corporation ("Owens-Corning") and Eagle-Picher Industries, Inc. ("Eagle-Picher") (collectively "appellees") was that their asbestos products were not used at the shipyard during those years. To support this claim, the defendants proffered, under Fed.R.Evid. 1006, a summary witness, Jimmy Joe Jackson, of the firm of Arthur Andersen & Co. After reviewing several boxes of documents, Jackson summarized those documents in his testimony and in a written summary that was admitted into evidence. The thrust of his testimony was that the documents revealed negligible or no sales of appellees' products to General Dynamics. He conceded, however, that these documents were fragmentary and not complete sales records for any of the companies involved.
 
 
 4
 The boxes of documents consisted of three different types of records: (1) General Dynamics purchasing records for asbestos products supplied to the shipyard from 1955 through 1959; (2) Cummings Insulation ("Cummings") sales records for asbestos products sold by Cummings to General Dynamics from June 1967 to June 1968; and (3) various Eastern Refractories Company ("ERCO") sales records for asbestos products sold by ERCO to General Dynamics. The ERCO records constituted the bulk of the documents in question.
 
 
 5
 Many of, but not all, the documents were authenticated during discovery. Many were listed as plaintiff's exhibits in a pretrial exhibit list, although it was Owens-Corning that ultimately offered them at trial. The General Dynamics records were produced during a 1978 deposition of Bernard Guillotte, the superintendent of the insulation department at the shipyard from 1955 to 1978. These were offered by Owens-Corning and admitted at trial without objection by plaintiff's counsel. Similarly, the Cummings records were authenticated during the deposition of Ronald Williams, a Cummings salesperson from 1954 to 1970. These documents were also offered by Owens-Corning and admitted into evidence without objection, as were additional Cummings records reviewed by Jackson. Fagiola thus did not object to either the General Dynamics or the Cummings records. As to some of the ERCO documents, however, Fagiola did object. The ERCO documents, which were contained in six boxes, were produced during the 1978 deposition of Albert Gardiner, an ERCO salesperson from approximately 1955 through the 1960's. At his deposition the boxes of ERCO documents were marked in bulk as B1-B6. One hundred and thirty-five individual documents were specifically marked as Exhibits B7-B141 and authenticated during the deposition. These were admitted at trial without objection. As to the remainder of the individual ERCO documents produced at the deposition, Owens-Corning marked them at trial as Exhibits B142-B177. After questioning by Judge Sifton and cross-examination by plaintiff's counsel, Judge Sifton held that B142-B177 were authenticated under Fed.R.Evid. 901(b)(3) and 901(b)(4) by Jackson's testimony that they were sufficiently similar to the admitted documents marked B7-B141.
 
 
 6
 The written summary prepared by Jackson set forth, by manufacturer name and product, the dollar amount of asbestos products sold to the shipyard during the relevant time period. Initially the document contained a page that detailed the percentage supplied by each asbestos manufacturer, but Owens-Corning withdrew this page in response to an objection by plaintiff's counsel. Jackson was cross-examined at length with regard to this written summary.
 
 
 7
 The summary evidence was favorable to Owens-Corning in that it indicated only $831 in sales of all Owens-Corning products to General Dynamics. It also failed to reflect any sales by Eagle-Picher. However, Jackson also testified that the documents were not "the entire universe of documents of sales to the Groton yard." After overruling Fagiola's general objection to the summary evidence as "horribly" prejudicial, Judge Sifton admitted it.
 
 
 8
 In his charge to the jury, Judge Sifton made clear that the summary document and testimony were not to be treated as representing the entirety of the shipyard's purchases of asbestos:
 
 
 9
 These charges and summaries and calculations were offered, as I think you have appreciated, some evidence concerning the identity of the products which were present in the submarines at the time it's alleged Mr. Fagiola was there. However, in connection with that, it's important to recognize that in the case of the Eastern Refractories, General Dynamics and Cummings, summaries that the parties agree that the record [sic] summarize are not all of the records of those companies or even a random selection of the records of those companies of the files.
 
 
 10
 You should not assume that these are all, or even a random selection from these records. I think someone yesterday suggested that he would be happy to accept them as a random representative selection, but there is no evidence on which to base an argument that this was just someone using some random products [sic] to pull out documents, so you can't assume that these are randomly selected.
 
 
 11
 Now, with those caveats, you may consider these summaries and give them such weight as they deserve in determining the nature of the information available on the subject of the products in the yard....
 
 
 12
 Ultimately the jury found for several defendants, including appellees Owens-Corning and Eagle-Picher. Among the other dispositions, one defendant which had settled before trial was apportioned 90 percent of the liability, and another was found liable for 10 percent of plaintiff's damages. Fagiola appeals from the judgment entered in favor of Owens-Corning and Eagle-Picher.
 
 DISCUSSION
 
 13
 Appellate review of the admission of a summary of documents is subject to the familiar abuse of discretion standard. See United States v. Koskerides, 877 F.2d 1129, 1134 (2d Cir.1989); United States v. Pinto, 850 F.2d 927, 935 (2d Cir.), cert. denied, 488 U.S. 867, 109 S.Ct. 174, 102 L.Ed.2d 143 and 488 U.S. 932, 109 S.Ct. 323, 102 L.Ed.2d 341 (1988). Fed.R.Evid. 1006 provides as follows:
 
 
 14
 The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at reasonable time and place. The court may order that they be produced in court.
 
 
 15
 A summary must of course be based on foundation testimony connecting it with the underlying evidence summarized, see Koskerides, 877 F.2d at 1134, and must be "based upon and fairly represent competent evidence already before the jury," United States v. Conlin, 551 F.2d 534, 538 (2d Cir.) (quoting Gordon v. United States, 438 F.2d 858, 876 (5th Cir.), cert. denied, 404 U.S. 828, 92 S.Ct. 139, 30 L.Ed.2d 56 (1971)), cert. denied, 434 U.S. 831, 98 S.Ct. 114, 54 L.Ed.2d 91 (1977).
 
 
 16
 Fagiola does not quarrel with Jackson's foundation testimony that he examined the General Dynamics, Cummings, and ERCO documents. He does, however, mount a challenge to the summary evidence based in part on the nature of the summary itself and in part on the nature of the underlying documents. Fagiola claims that the summary evidence did not fairly represent the contents of the documents and that it was so confusing and misleading as to be inadmissible. He also claims that some of the ERCO documents were not authenticated and were therefore not in evidence. Finally, he claims that some of the ERCO documents were inadmissible hearsay.
 
 
 17
 We turn first to the question whether the summary fairly represented the underlying documents. Fagiola argues that Jackson based his summary testimony on assumptions he made as a result of conversations with defense counsel, and that the summary testimony is therefore based on information outside the record. In particular, Fagiola claims that counsel for Owens-Corning told Jackson which products contained asbestos and which did not, and that this led him to make improper assumptions about the records he was summarizing. However, Jackson testified that the records showed sales to the Groton Yard of only $831 of Owens-Corning products of any kind and no Eagle-Picher products at all. The Owens-Corning figure is so small that any impermissible assumptions as to which of the products contained asbestos are clearly harmless. Whatever weight the jury might have given to the summary simply would not have been affected by the elimination of such assumptions. As to Eagle-Picher, of course, the lack of sales recorded in the documents eliminated any question as to whether particular products contained asbestos.
 
 
 18
 Similarly, we reject Fagiola's claim that the summary was more likely to confuse or to mislead the jury than it was to assist it. Fagiola relies on United States v. Citron, 783 F.2d 307 (2d Cir.1986), in which we found an abuse of discretion in the admission of a summary chart containing a figure that had been calculated but not explained by the government. See id. at 316-17. In Citron, however, the district court conceded that it had "never seen such playing with numbers and doubletalk and triple talk, which no one understands," id. at 316, but nevertheless admitted the chart on the grounds that "if it is weak, cross examination will destroy it totally," id.
 
 
 19
 Unlike the methods in Citron, Jackson's methods were explained at length and are better described as tedious than as complicated. His summary was thus hardly something that "no one understands." Moreover, Judge Sifton was at pains to caution the jury not to place undue importance on the summary evidence. He emphasized that the records in question were neither complete nor randomly selected. Finally, Jackson's written summary, unlike the Citron chart, contained totals derived through the simple addition of sales. It was thus a quintessential summary, used to facilitate the jury's deliberations and to avoid forcing the jury to examine boxes of documents in order to make simple calculations.
 
 
 20
 We also note that asbestos cases such as the present one involve difficult questions of proof as to the source of asbestos products at work sites years ago. All parties labor under the burden of reconstructing long-gone events through evidence that is necessarily less dispositive and complete than they would wish. Appellant thus attempted to carry his burden through anecdotal evidence based on individual recollections of events twenty to thirty-five years before. We see no harm in allowing the defendants to rely on what fragmentary, if otherwise admissible, documentary evidence of those events exists today.
 
 
 21
 In sum, the objections that Jackson's summary did not fairly represent the documents and was excessively confusing and misleading go more to its weight than to its admissibility. See Kay v. Federal Rubber Co., 60 F.2d 454, 456 (3d Cir.1932). The ample cross-examination and Judge Sifton's careful instructions ensured that the jury was fully aware of the limitations of the summary and would not give it undue weight.
 
 
 22
 Of course, the admissibility of the summary turns in part on the admissibility of the documents summarized, and appellant argues that some of those documents were never authenticated and are inadmissible hearsay. Turning to the authentication issue, appellant concedes the authenticity and admissibility of the General Dynamics and Cummings records. However, he claims that ERCO documents B142-B177 were not properly authenticated and were thus inadmissible. The provisions of Fed.R.Evid. 901 upon which Judge Sifton relied in admitting B142-B177 provide in pertinent part:
 
 
 23
 (a) General provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.
 
 
 24
 (b) Illustrations. By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:
 
 
 25
 . . . . .
 
 
 26
 (3) Comparison by trier or expert witness. Comparison by the trier of fact or by expert witnesses with specimens which have been authenticated.
 
 
 27
 (4) Distinctive characteristics and the like. Appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances.
 
 
 28
 Fed.R.Evid. 901.
 
 
 29
 Jackson testified that he had compared the ERCO documents that had not been authenticated at the Gardiner deposition, B142-B177, with those that had not only been authenticated but had also been admitted without objection, B7-B141. Jackson testified that B142-B177 were the same kind of documents as B7-B141, and Judge Sifton, following a lengthy voir dire, held that the former had been sufficiently authenticated under Rule 901(b)(3), (4) by this testimony. His finding of authentication is not clearly erroneous. See Zenith Radio Corp. v. Matsushita Elec. Indus. Co., 505 F.Supp. 1190, 1226 (E.D.Pa.1980), modified on other grounds, 723 F.2d 238 (3d Cir.1983).
 
 
 30
 Fagiola's final claim, that B142-B177 were inadmissible hearsay, is somewhat more complicated. Because of the hearsay rule, authentication as a genuine ERCO document would not generally suffice to admit the contents of that document for its truth. One exception is when documents are authenticated as ancient documents under Rule 901(b)(8), in which case they automatically fall within the ancient document exception to the hearsay rule, Rule 803(16). However, the district court rejected appellee's attempts to offer B142-B177 under Rule 901(b)(8) because there was no evidence as to where the documents were found at ERCO. He thus could not make the requisite finding under Rule 901(b)(8)(B) that the documents "[were] in a place where, if authentic [they] would likely be." Although he went on to hold that the documents were authenticated under Rule 901(b)(3), (4), that ruling did not bring the contents of the documents within an exception to the hearsay rule.
 
 
 31
 The most natural grounds for admission of B142-B177 would seem to be under the business records exception, Rule 803(6). However, that rule requires a finding that the documents in question were kept in the course of a regularly conducted business activity and that it was the regular practice of the business to make such records. No attempt appears to have been made to provide evidentiary support for such a finding regarding B142-B177. Arguably, Jackson's testimony as to the similarity of B142-B177 to B7-B141 might support a finding of regularity if B7-B141 had been shown to be business records admissible under Rule 803(6). However, so far as we can tell from the papers presented by the parties on this appeal, there was also no evidence of regularity supporting the admission of B7-B141 as business records under Rule 803(6). There was, therefore, no evidence of regularity to be incorporated by testimony as to similarity.
 
 
 32
 Given the admission without objection by appellant of some of the ERCO documents, it might also have been argued that the remainder should be admitted under the so-called "rule of completeness." However, Rule 106 allows only parties against whom partial documents are offered to invoke that rule, and the ERCO documents here were offered by Owens-Corning.
 
 
 33
 The record thus does not indicate a ready answer to the claim that B142-B177 were inadmissible hearsay and improperly included in Jackson's summary evidence. Indeed, the grounds for avoiding the hearsay problem underlying all the documents, including those from General Dynamics and Cummings and the ERCO documents B7-B141, do not appear in the papers before us. Based on appellant's counsel's opening statement to the jury, which referred to the Cummings and ERCO documents, and the inclusion of many of the documents in the pretrial list of plaintiff's exhibits, we might speculate that plaintiff was perhaps content to allow these documents to be admitted for tactical reasons involving defendants other than the appellees. However, appellant devoted only a conclusory paragraph of his brief to argument of the hearsay issue, and Owens-Corning responded only by way of an unhelpful footnote. We are thus left in the dark as to these matters.
 
 
 34
 In any event, an examination of the record also does not disclose that plaintiff ever posed to Judge Sifton an objection regarding the hearsay issue in contrast to his objections as to prejudicial impact and lack of authentication.[1] B142-B177 were not the only documents on which the summary was based, and appellant makes no claim that the thrust of the summary would have been substantially altered had B142-B177 been excluded from consideration. It is true that their inclusion increased the volume of documents showing inconsequential or no sales by appellees, but we do not believe that the increase in volume caused any substantial injustice In these circumstances, reversal is not called for.
 
 
 35
 Affirmed.
 
 
 
 *
 The Honorable Robert P. Patterson, Jr., United States District Judge for the Southern District of New York, sitting by designation
 
 
 [1]
 The failure to raise the hearsay issue does not appear to be the result of oversight. In a letter from plaintiff's counsel to counsel for Owens-Corning, the hearsay problem and the lack of evidence of regularity bringing the documents within the business records exception were alluded to. In subsequent legal memoranda to the district court, however, no such objection was made